The opinion below is hereby signed. Dated: March 1, 2006.

_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SER CORPORATION, | ) | Case No. 04-01249 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SER CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 04-10086 |
| RAPID PAY, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION RE MOTION TO REARGUE GRANTING OF SUMMARY JUDGMENT

The court will deny the pending Motion to Reargue Granting of Summary Judgment whereby two of the defendants seek reconsideration of this court's order that in large part granted the plaintiff's motion for summary judgment imposing sanctions for violation of the automatic stay of § 362(a) of the Bankruptcy Code (11 U.S.C.).

I

The defendants' opposition to the Motion for Summary Judgment was untimely and was not signed by a member of the bar of this court. These defects justify denial of the motion seeking reconsideration. First, contrary to the defendants' contention, the granting of summary judgment as unopposed did not arise from a docketing mistake by the clerk. Second, LBR 7056-1 in conjunction with F.R. Bankr. P. 9011(a) required any opposition to include a memorandum signed by the defendants' counsel of record. Instead of filing such an opposition, the defendants filed only an affidavit of an individual who was not an attorney authorized to appear in the proceeding.

On November 22, 2005, SER Corporation ("SER"), the plaintiff in this adversary proceeding, filed a Motion for Summary Judgment directed against defendants Rapid Pay, LLC ("Rapid Pay"), and Stephanie S. Nimberg, Rapid Pay's president.[1] Under LBR 9013-1 and F.R. Bankr. P. 9006, an opposition to that motion was due by December 7, 2005. After that deadline passed without any timely opposition being filed, the clerk transmitted the motion to the court for its consideration. The court signed an order partially granting

---

[1] Unless otherwise indicated, references in this opinion to "the defendants" shall be understood as referring only to Stephanie Nimberg and Rapid Pay, LLC, and not Gerald Nimberg.

2

the Motion for Summary Judgment on Monday December 19, 2005. At that time, no opposition had been docketed by the clerk.

However, on the preceding Friday, December 16, 2005, nine days after the time to file an opposition had expired, Rapid Pay, LLC and Stephanie Nimberg had filed a Motion to Extend Time to File Opposition and Reply until December 15, 2005, and an opposition in the form of the Affidavit of Gerald Nimberg in Opposition to Motion for Summary Judgment.  When the court signed its order partially granting summary judgment on December 19, 2005, the clerk's office had not docketed the defendants' filings.  Even if those papers had been docketed on December 16, 2005, and the court had granted the Motion to Extend Time, the opposition would have still been untimely as the requested extension (to which SER had consented) was only until December 15, 2005.

On January 3, 2006, Stephanie Nimberg and Rapid Pay, LLC filed their Motion to Reargue Granting of Summary Judgment under Fed. R. Civ. P. 60(a) and (b), urging that reargument be allowed because (a) due to a docketing error, the court failed to consider the allegedly timely opposition when ruling on the motion, and (b) the opposition raises issues of material fact such that summary judgment should be denied.

The defendants' Motion to Extend Time and the opposition to the motion for summary judgment were filed one day after the expiration of the December 15, 2005 proposed deadline. The opposition was thus untimely[2] and this justifies disregarding the opposition. When the court acted on SER's Motion for Summary Judgment, the docket accurately reflected that no timely opposition had been filed. The court thus summarily rejects the defendants' contention that the court's ruling was based on a docketing error: the court's treatment of the Motion for Summary Judgment as not having been timely opposed was absolutely correct. Moreover, the opposition will also be overruled as violating Rule 9011 because it was not signed by an attorney authorized to file papers in this court.

Even if the opposition had been timely filed and had included a memorandum signed by the defendants' attorney, the court concludes, for reasons stated below, that the defendants' opposition raises no issues of material fact or

---

[2] The court's order partially granting summary judgment was not a final appealable order as it did not fully dispose of the proceeding. Technically, therefore, neither Rule 59 or 60 of the Federal Rules of Civil Procedure apply to the motion for reconsideration. However, the court is still free to disregard an opposition that was not filed by the due date. Otherwise, deadlines would never have any effect with respect to the court's ruling on motions seeking relief in the form of a non-final judgment. The defendants have only themselves to blame for filing their motion to extend time only after the deadline for an opposition had long ago expired.

law that would alter the court's determination that summary judgment in SER's favor is appropriate.

                                  II

SER's Motion for Summary Judgment asserts, *inter alia*, that Rapid Pay's post-petition seizure of funds from the debtor, its post-petition attempt to perfect a security interest against SER through the recording of a financing statement under the Uniform Commercial Code ("UCC") in the Land Records of the District of Columbia, and the refusal to return the seized funds constituted violations of the automatic stay of 11 U.S.C. § 362(a).  In their late-filed opposition, the defendants urge that summary judgment is inappropriate because there remains a factual dispute as to whether the funds seized and retained were actually property of the estate subject to the automatic stay.  Similarly, the defendants assert that the violations alleged by the plaintiff did not constitute wilful violations of the automatic stay because: (1) the debtor's receivables had been assigned to Rapid Pay, LLC pre-petition and were thus not property of the debtor and did not become property of the estate subject to the automatic stay; (2) the manager of the debtor told Rapid Pay, LLC that it could take the subject funds; (3) the UCC financing statement was filed pursuant to standard operating

procedure, was terminated by the defendants when they learned of their mistake, and such violation should thus not be treated as wilful; and (4) Rapid Pay, LLC has been experiencing monthly losses such that it is unable to return the funds.  Even if the court had taken the defendants' opposition into account when ruling on SER's motion, the court would still have granted summary judgment in SER's favor.

                                III

The court rejects the defendants' argument that summary judgment is inappropriate because there remains a factual dispute as to whether the $79,277.06 seized by the defendants from SER in violation of the automatic stay was actually property of the estate subject to the stay.  In support of their position, the defendants offer Gerald Nimberg's affidavit, which cites to a transcript in which Stephanie Nimberg quotes to the contractual language that allegedly transferred ownership interest in the accounts receivable to Rapid Pay, and testified that "[t]hese credit card receivables belong to Rapid Pay, LLC."  To the extent this would suffice to create a factual dispute regarding whether the assignment was intended as a sale, the dispute is immaterial as a matter of well-established law.

The UCC governs assignments of accounts receivable. See D.C. Code §§ 28:1-201(37) ("security interest" includes an interest of a buyer of accounts in a transaction subject to Article 9); 28:9-109(a)(3) (Article 9 applies to a sale of accounts). This leads to the conclusion that the accounts receivable were property of the estate on the petition date under 11 U.S.C. § 541(a). In other words, under Article 9 of the UCC, accounts receivable that were the subject of a sale nevertheless remain property in which the debtor has an interest for purposes of 11 U.S.C. § 541, and in which the assignee has only a security interest, regardless of whether that security interest was properly perfected, as the concept of title has no significance under Article 9. See Octagon Gas Systems, Inc. v. Rimmer (In re Meridian Reserve, Inc.), 995 F.2d 948, 955-57 and particularly 957 nn. 8 and 9 (10th Cir. 1993).

Moreover, Rapid Pay failed to perfect the assignment to it of SER's accounts receivable under the UCC before SER filed its voluntary petition. See D.C. Code § 28:9-310(a) (with exceptions of no relevance here, filing of a financing statement is necessary to perfect a security interest). Accordingly, the estate's interest in the accounts was unaffected by Rapid Pay's unperfected assignment which is

treated as a nullity as against the estate.

The Bankruptcy Code mandates this conclusion by reason of 11 U.S.C. § 544.  <u>Octagon Gas</u>, 995 F.2d at 955 n.6.  Pursuant to § 544(a), the debtor-in-possession (vested with the powers of a trustee under 11 U.S.C. § 1107(a)), was clothed with the rights and powers of a creditor who had a judicial lien on the accounts receivable on the petition date.  Rapid Pay's assignment of the accounts receivable was unenforceable against a creditor holding a judicial lien against the accounts receivable as of the petition date.  <u>See</u> D.C. Code §§ 28:9-317(a)(2) (unperfected security interest is subordinate to the rights of a lien creditor); 28:9-102(52) (defining "lien creditor").  Moreover, under D.C. Code § 28:9-318(b):

> For purposes of determining the rights of creditors of . . . a debtor that has sold an account . . . while the buyer's security interest is unperfected, the debtor is deemed to have the rights and title to the account . . . identical to those the debtor sold.

Accordingly, the assignment was ineffective against the debtor-in-possession.  Section 544(a) treats the accounts receivable as property of the estate wholly unaffected by Rapid Pay's unperfected assignment.

The defendants' acts thus violated § 362(a)(3) (barring "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property

of the estate"). Moreover, the defendants' retention of the accounts receivable was an act to collect a prepetition debt and thus violated 11 U.S.C. § 362(a)(6).

As held in <u>Armstrong v. Executive Office of the President, Office of Admin.</u>, 1 F.3d 1274 (D.C. Cir. 1993), for civil contempt sanctions to be imposed there must be a violation of an order that is clear and unambiguous and the violation must be proven by clear and convincing evidence. SER has made the required showing. As discussed above, well-established law required treating the accounts receivable as estate property, with SER having only a security interest despite the "sale" character of the transaction, and, in any event, required treating Rapid Pay's security interest as a nullity because it was unperfected. Indeed, counsel for SER communicated that position to Rapid Pay's counsel on or about August 17, 2004, prior to Rapid Pay's commencing on August 25, 2004, improperly to exercise control over the accounts receivable.

IV

The court also rejects the defendants' contention that the seizure and retention of estate funds did not constitute a wilful violation of the automatic stay because the debtor gave Rapid Pay permission to take the accounts receivable. In

9

support of this contention the defendants offer the affidavit of Gerald Nimberg, in which he cites to the deposition testimony of Stephanie Nimberg, who, in her deposition, stated that "I know that Lance had spoken to I believe her name is Gina to keep the American Express sales and I'm quite certain Julio made a trip to DC and personally met with Roberto Donna, who told him to take the credit card sales."  The persons to whom these alleged statements were made (Lance and Julio) are neither the affiant nor the deponent, and the affidavit and deposition recitations of what those persons said they were told are inadmissible hearsay.  Even assuming the statements were made, the debtor had no authority to unilaterally lift the automatic stay, and would have been required--like any party seeking relief from the automatic stay--to obtain an order of the court before relinquishing estate assets.  11 U.S.C. § 362(d); F.R. Bankr. P. 4001(a) (requiring service of a consent motion for relief from the automatic stay on the unsecured creditors' committee or, if there is no committee, the creditors listed under Rule 1007(d)).

V

The defendants urge that the recording of the UCC financing statement was inadvertent, and was timely corrected, and that the violation of the stay was thus not wilful.

10

However, shortly after SER filed its bankruptcy petition, and prior to the filing of the UCC financing statement, SER's counsel informed Rapid Pay of the bankruptcy case. For civil contempt purposes, good faith is not a defense when one acts in violation of an injunction after being put on notice of the injunction. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949).

Moreover, SER's counsel had alerted Rapid Pay to its failure to have perfected its security interest in the same communication alerting it to the bankruptcy case. How Rapid Pay's filing of a financing statement after that communication could be "inadvertent" is not explained, and the assertion of inadvertence is thus not credible.

Even if the defendants could make a credible showing that this post-petition attempt to perfect a lien against SER was inadvertent and promptly corrected (and that, despite McComb, this is an adequate defense to civil contempt), such a showing would be insufficient to overcome SER's right to summary judgment and compensatory damages. SER's right to compensatory damages is easily supported by the defendants' improper seizure and retention of funds making it unnecessary for SER to demonstrate that a further wilful violation of the stay was committed when the defendants recorded a lien against

11

SER. The improper retention of funds began three days after the improper UCC filing. The court's review of the statement of attorney's fees and expenses incurred convinces the court that the debtor's damages in the form of such attorney's fees and expenses would have been incurred to the same extent even if SER had not pursued contempt based on the improper UCC filing. Although the improper lien filing was briefly addressed as part of SER's motion for summary judgment, it was necessary to address the impropriety of that lien filing in order to show that the postpetition retention of accounts receivable could not be upheld on the basis of that filing. In moving for reconsideration, the defendants have not contended that there were any meaningful fees and expenses that would not have been incurred but for the pursuit of contempt based on the improper UCC filing.[3] Accordingly, the court finds that any inadvertence in the defendants' improper recording of a lien against SER is irrelevant for purposes of this analysis.

---

[3] Moreover, in objecting to the statement of attorney's fees and expenses, the defendants had the obligation to object to any fees and expenses they deemed attributable solely to pursuit of contempt regarding the improper filing of the UCC financing statement. They raised no such objection.

VI

The defendants also contend that:

> There has been no evidence to hold Stephanie Nimberg as an individual liable for acts on behalf of a corporate principal.  The Plaintiff seeks to pierce the corporate veil of Rapid Pay, LLC.  The plaintiff has failed to set forth the elements required to pierce the corporate veil.

However, SER did not seek to pierce the corporate veil. Instead, it sought summary judgment against Ms. Nimberg on the basis that she acted on behalf of Rapid Pay to refuse to release the improperly seized funds, as demonstrated by her letter of September 20, 2004, effectively communicating to counsel for SER a refusal to release the funds.[4]  The Affidavit, which is the basis for the Motion to Reargue, does not contest or dispute Stephanie Nimberg's responsibility for the decisions to seize and retain SER's property.[5]  Just as a corporation's officers are not immunized from liability for

---

[4] The defendants have not contested, as contemplated by LBR 7056-1, SER's recitation in its statement of material facts not in genuine dispute that "Additional efforts were made to bring the seriousness of the apparent stay violations to the Defendants' attention and those efforts were ignored as exhibited by the letter from Defendant's President, Ms. Nimberg, dated September 20, 2005."  That fact is thus taken as established for summary judgment purposes.

[5] Stephanie Nimberg is the president of Rapid Pay and as she acknowledged at pages 38-39 of her deposition (attached as part of Exhibit A to the Affidavit), her duties included "managing the employees and the operations."

torts they commit on behalf of the corporation, such officers are also not immunized from liability for civil contempt for undertaking an act violating the automatic stay.  See Phillips v. Lehman Bros. Holdings, Inc. (In re FAS Mart Convenience Stores, Inc.), 318 B.R. 370, 376 (Bankr. E.D. Va. 2004); Nelson v. Post Falls Mazda (In re Nelson), 159 B.R. 924, 925 (Bankr. D. Idaho 1993).  An injunction against an insolvent corporation (which Rapid Pay suggests it is) would be an empty remedy if corporate officers could with impunity take steps to violate the injunction.

## VII

Finally, the defendants urge that Rapid Pay is not in a financial position to return the funds, that it is three months in arrears to its landlord, and that this renders the failure to return the funds a non-wilful violation of the automatic stay.  The seizure of funds, however, occurred between August 25, 2004, and September 7, 2004, the defendants were advised of the violation on or about September 8, 2004, and Rapid Pay elected not to return the estate funds to the debtor.  That Rapid Pay has since fallen into arrears with its other creditors does not mitigate the harm that was caused to the debtor's estate by virtue of Rapid Pay's and Ms. Nimberg's wilful violation of the stay.

VII

For all of the reasons stated above, the court will deny the defendants' Motion for Reconsideration and will deny the defendant's Motion to Extend Time.

An order follows.

[Signed and dated above.]

Copies to:

All counsel of record; Office of the United States Trustee; and:

Lawrence Morrison, Esq.
17 Battery Place, Suite 1330
New York, NY 10004

Thomas J. Luz, Esq.
1500 Broadway, 21st Floor
New York, NY 10036

Stephanie S. Nimberg
6 Jodi Court
Cherry Hill, NJ 08003

Stephanie S. Nimberg
9 Quaker Road
Princeton Junction
New Jersey 08550

Rapid Pay, LLC
c/o Gerald Nimberg
6 Jodi Court
Cherry Hill, NJ 08003